and with the lawyers who are going to address the court each stand and please tell us their names and spell your last name. Good morning, Your Honor. Stephanie Puente from the Office of the State Appellate Defender on behalf of Mr. Torres. Can you spell your last name? Sure. P-U-E-N-T-E. Good morning. Assistant State's Attorney Lisanne Pugliese, P-U-G-L-I-E-S-E, appearing on behalf of the people of the state of Illinois. As you both know, you each have 20 minutes. Ms. Puente, do you want to save any of that for rebuttal? Yes, Your Honor, if I can save four minutes for rebuttal. And also that microphone does record, but it does not amplify, so please keep your voices up. Ms. Puente, you may begin whenever you're ready. Good morning. May it please the court, counsel, I'm Stephanie Puente from the Office of the State Appellate Defender on behalf of Miguel Torres. Mr. Torres raised two issues on appeal. The first issue that I will be addressing is the ineffective assistance of counsel claim. And I will spend the remainder of the time addressing the one act, one crime challenge. This case all came down to whether the state proved that Torres had the specific intent to kill when he fired two shots at Juan Salgado. The defense theory was that Torres only intended to scare Salgado. Yet, Torres' attorneys failed to support this defense in three ways. First, they failed to look at the juvenile Cody's rap sheet before the start of trial, which they could have used to correct his false testimony as to the terms of the plea. Second, they failed to use the terms of the plea to effectively impeach the juvenile co-defendant and the mother of his children about their motive to testify favorably for the state. And, failed to deliver a closing argument in which it did not address the facts, law, or any of the weaknesses of the state's case. Now, Torres' attorneys acted unreasonably because Roberto Vargas, who was the juvenile co-defendant in this case, provided the most crucial testimony. He was the link between... How did not the victim saying that they walked up and shot be the most crucial? Because Roberto Vargas testified about the agreement, about the events leading up to the shooting. And how about the defendant's statement? Wasn't that kind of important too? Well, the defendant did acknowledge that he shot, and that he shot because he was intending to scare as part of the agreement. While we understand that there's only a case file that's saying that shooting at a close distance range is sufficient to establish intent, for a specific intent to kill for the purposes of attempted murder, here we have circumstantial evidence that shows what Mr. Torres' objective was when he was shot. Therefore, it was very crucial to use the guilty plea, the terms of the plea, to impeach Vargas. The scaring thing is what you're saying, that that was the purpose, and didn't Vargas testify to that too? But he also minimized his involvement in the case. We have to remember that the person who set the shooting in motion was his mother, Linda Gerardo Vargas, who did not speak English, she spoke Spanish. So Vargas translated the instructions on his mother's behalf to Torres, and the intent, she said, was to scare. Because, as we know, she was involved in the business of drug trafficking. One of her associates, absconded, disappeared with a pickup truck full of heroin, and drug dealers in Mexico were threatening her family. And she specifically said, because she was trying to protect her family, she wanted to find, with her associate, to help locate the missing truck. I think we understand the intent to scare rather than kill theory. I guess what we don't understand is why, knowing that he, that the witness had not pled guilty to attempted murder, was going to help make that theory. That theory was a tricky theory, to say the least. You know, I shot you in close range, but I didn't want to kill you, I just wanted to scare you. Maybe it could have been successful, but we're not clear, I don't think, on how the failure to have the rap sheet, the failure to look at the rap sheet, the failure to cross-examine on this, was going to make that theory better. It would have made the theory better because Angel Sertran, who was the passenger in the car, contradicted a crucial piece of evidence, which was Vargas testified that he said, I got out of the car, Mr. Torres, I saw him go up to the driver's side of the car, and he had pulled out a gun and fired two shots. Angel Sertran testified that he also saw a second individual give the signal to shoot. Therefore, what Vargas essentially did was minimize his role that he had in the shooting, and therefore it was critical for the jury to learn all the benefits he received. I mean, they didn't learn anything. They didn't learn that by the fact of him not pleading guilty to attempted murder, he wasn't facing, he didn't face a cross-ex conviction. And at the time of the case, he could have been transferred to adult court, where he would have been exposed to a cross-ex felony sentence, also a 15-year fire add-on, three years MSR, he would have felony status, and because he plied to a lesser offense, they couldn't effectively evaluate his credibility on two very crucial pieces of evidence, which is, one, the intent was only to shoot, that was part of the agreement, because they did not want to kill the associate, because if they did, they would have never been able to locate the pickup that had the drugs. And that was the impetus of what set all these issues in motion. And then, as we said, as I previously argued, Vargas was testified inconsistently with the other piece of evidence that was used to tie, that was used to prove that Miguel Torres acted with the intent to shoot, which was, when he took away, Vargas didn't even say anything about, yeah, I pointed, I nodded at Torres and said, yeah, that's the guy who we want, the drug is the one that you have to shoot. And as well as his, by not using that, the terms of the plea to impeach as well, Eusebio Carmona, the mother of Mr. Vargas' two children, we also, the jury couldn't effectively evaluate her credibility as to another key piece, which was she was the only person who testified that Torres said the gun jammed, which the state used to establish intent. Again, her testimony was inconsistent with the testimony of Angel Cintron and even Roberto Vargas, who said, after the second shot, Mr. Torres immediately ran away. Because they didn't get to hear any benefits that they received, and again, as the court interpret has held, we don't have to show, the defendant doesn't have to show before cross-examining and witnesses show motive or bias to testify favorably for the state, that any promises of leniency have been made or there's any expectations of special favor in the witness's mind. Rather, the evidence just has to give a reasonable inference that the witness stands to gain something. The state makes a significant point that it was a 402 conference and the state actually asked for jail time at the time of the plea. So, how does that figure in with your argument? Well, the plea is ultimately between the two parties, correct? It's between the state and the defendant. The judge can make a recommendation, and they were still involved in the plea discussions. And again, as Triplett said, there doesn't really have to be a deal. It's that there's this inference that Vargas, the juvenile co-defendant, had something to lose. I mean, by him being out on probation, he was allowed to spend time with his kids and work, and he didn't want to risk losing that. But he was well aware, was made aware that he was on probation. That wasn't really an issue.  But they weren't aware of what the terms of the plea were. But Vargas was aware of what he had pled to. That's what they were misinformed about. Right, which was... I mean, he made quite a good deal for attempted murder. Yes. And then also... But wouldn't that indicate a better deal? That he got actually a better deal if it was attempted murder and he got probation? I don't know if he can. I don't think he can. The jury would know that. But would the inference be even a better deal that it was attempted murder and he only got probation? Unfortunately, in this case, because the trial counsel wasn't able to effectively clean out that or expound on that, the jury might have not realized it was actually what he testified was a better deal. Because he didn't go into all the other things that he could have faced if he was sentenced as... or tried and sentenced as an adult. So even by hearing he got probation, they don't know the true effect or the full effect of the plea he had on his... murder to testify for real estate. Additionally, defense counsel here failed to effectively use closing arguments to support the theory of defense. The most crucial thing he did was he disavowed Mr. Torres' statement. Which, as your honors have noted, the statement is consistent with the theory that Mr. Torres only intended to scare when he shot. But there's also additional evidence in there that could have used to impeach Vargas' testimony and support the theory. Where Torres, like St. John, says Vargas pointed... gave me the signal to shoot. He said this was the person to shoot. Additionally, any good points that the defense counsel made in closing, they were buried in all these anecdotes that were not tethered to the evidence. So what that does is give the inference to the jury that there's no defense. And there's plenty of things he could have argued. Such as the inconsistencies that I just pointed out right now. Any motive for bias for any of the witnesses. Yet he gets up and says, I'm not going to judge the facts and I'm not going to bash anybody. Which is not the purpose of closing arguments. If your honors have no more questions about this issue, we would like to hear from you. Because the state did differentiate in indictment among the two shots that Torres fired, and did not apportion each individual shot as a separate shot at the trial, So the intent of the prosecution was to treat... How do you reconcile prior? Okay, prior is one of the outliers in this case. Prior relies on, I believe it's shame and butler. Cases that have held that when the indictment names two separate victims, and the intended harm is of a person, two convictions can stand. Here the distinction is that the harm that was being prohibited is harm against an occupied vehicle. So because Torres was charged with the same criminal act, which is the same conduct, under different theories of capability, they encompass and apply to the same thing. So the distinction would be, if I can clarify again, is that the intended harm is the occupied vehicle. Versus in prior, you have, I think it's a car, but it's also an outlier, because it's one of the only cases that talk about how even if it's one vehicle, you can have separate takings. And that's inconsistent with other case law that says that, and I believe butler is the case that they rely on. In butler, the defendant and co-defendant robbed two men at the same time, at the same place. During the robbery, there was two separate takings. That's why the butler court held that when there's two victims, where the harm is intended against those two victims, and there was two takings, those two convictions of robbery could stand. Prior doesn't go into that analysis. All it says, well, it's well-established law. But to know whether it's well-established and whether it allows two separate convictions when the intended, the prohibited harm is against a vehicle, we have to trace all the cases it relies on. Again, people versus shooting, people versus butler, and people versus Cone 2, which the state relied on in its opening brief, their two convictions can stand because the intended harm was against a person, and those people were not getting dead men. Now, did you cite people v. Jackson, which was decided in 2016 by this court, and it specifically goes against prior? Are you familiar with it? Yes. I became familiar with it as preparing for oral argument. I think that's your best argument here, is people v. Jackson. You may want to take a look at it, but that's your best argument. Because in people v. Jackson, this court specifically said that just because there's two victims doesn't necessarily prevent the one crime. Why not the state decide it either way? Right. Because, again, it's like how Jackson, if I remember Jackson, you can't, because it's all clear-cut saying that there's two people in the car, so there's two victims, right? What you really need is what the state seeks to do. The key is to examine how the particular crime is defined. So the gravamen of the section under which Mr. Torres was convicted, which was Section 24-1.2. Which is just firing into a vehicle knowing it to be occupied. Right. So there wasn't a victim necessarily. Right. As long as they know it was occupied already, and that was the shot that was argued at court, that was the shot that struck Salgado, who was the driver in the car. So that count is already accounted for and merged into an intact murder charge. Because, again, there were two counts, but those two counts were not necessarily specific to any of the victims. Correct. Exactly. The counts that were specific to the victims, the aggravated discharge in the direction of an individual, those were nollied before the start of trial. If they hadn't been nollied, Jackson and Shue, Butler, and Kintu, would probably prohibit us from even making the argument that we are making today. Because that is how it was directed to two individuals. Here, the identity of the person who is in the car doesn't matter. The only thing they had to show was that it was occupied by somebody, and that was the shot that struck Mr. Salgado. Because, essentially, firing a single shot at a single victim can sustain but one conviction, regardless of the number of the occupants in the vehicle. So because Torres committed a single act, but he fired at Salgado, and because Section 21-1.282 is drafted in terms of the vehicle, not its occupants, the abdischarge pertaining to Cintron should be vacated. What about the fact that there were two shots? The fact that there were two shots, this is, again, as Crespo and I believe you cited Amara in their briefs, sure, there are separate facts that could have sustained separate convictions, but they were not differentiated in the indictment. The criminal act charged in the indictment was discharging the firearm. Then at trial, and in the arguments, the state kept saying the two shots struck Salgado, the driver. So they didn't differentiate it. And when the state doesn't differentiate or apportion the gunshots, this case becomes more like Amaya, where when a state charges multiple shots as a conglomerate of shots, only one conviction can be sustained. As I argued earlier, if they had not mollied the aggravated discharge counts in the direction of the person, we probably would have a different, we probably have no support for that argument. But again, it's because they didn't apportion the shots, they did not differentiate the shots in the indictment. And the, how the statute is drafted, it's drafted in terms of the vehicle, not the occupant. But the jury was instructed that they had to find that he fired a shot in a vehicle occupied by Cintron, correct? But in the closing arguments, I think it was in the state's rebuttal, it said he put two bullets at point-blank range at Salgado. Right. I understand the state's argument and the instructions to the jury were not necessarily consistent. Yes. And we'll ask the state about that. If you have no further questions, Your Honor. Did you save your time for rebuttal? Which we actually like to go over, but that's all right. May it please the court, counsel, again, Lysanne Pugliese, assistant state's attorney appearing on behalf of the people of the state of Illinois. Defending here has, did receive the effective assistance of counsel, and he has failed to show that he received the ineffective assistance of counsel based on counsel's decision not to look at Vargas' rap sheet prior to the trial, where he did not cross-examine Vargas and Kamona about a fictitious deal that the record even existed, and where counsel's closing argument was a reasonable trial strategy. Now, initially, with regard to counsel's viewing on this rap sheet, people like to note that this rap sheet is not even part of the record on appeal and does not serve as a proper basis for this claim, or this court does not know what the rap sheet in fact shows and whether or not it would have changed counsel's behavior at trial, because this was a juvenile rap sheet that apparently was left in the jury room. And even had counsel looked at this rap sheet, it would not have changed the trajectory of this trial and there would be no prejudice. Vargas' credibility was tested with regard to his plea. These were two words that the state's attorney misspoke that related to attempt murder versus just add that with regard to his plea. They heard that he got probation, which, as Justice Griffin noted, a plea of probation on an attempt murder and aggravated battery would show even more of a purported deal and raise an inference that he got even more of a deal than he got. So this cuts both ways as far as prejudging the defendant. It also helps the defendant because the jury considered that when assessing his credibility. So as far as prejudice regarding these two statements, that simply cannot be shown. Now, again, and with regard to this purported plea deal that counsel is referring to, again, as Justice Griffin noted, there was a vote of two patents here. The record refutes that any extra plea deal was acquired here due to his testimony. That was not at play here when Vargas pled guilty. As noted in the transcript from the plea deal, this was a 402, and based on the considerations in the 402, this is the deal that he got. And the state even put on the record that they were seeking jail time. So the record, and Vargas himself denied that he was given any promises or made any promises for his plea. So there's simply no extra cross-examination that would have come about based on the correct terms of Vargas' plea coming into play. I believe that even if counsel had reviewed the rap sheet, counsel still would not have had any questions for Vargas regarding the plea agreement? Well, initially, I feel like this is just based on speculation to show that there's prejudice here because we don't know what the rap sheet, in fact, showed. Because this is a juvenile rap sheet. We don't know if we're disposed. The question is would things have gone differently, and counsel surely would have had more questions. Actually, because counsel had not done what he should have done, and the state asked this question of Vargas, and Vargas gave this incorrect answer, which I believe the state knew was incorrect. The state didn't attempt to correct it. The counsel for the defendant didn't know he needed to correct it, and you don't believe any of that is error. You don't believe that's still a reasonable, effective assistance of counsel. I believe counsel makes closing arguments, and in his closing arguments, he basically says, you know, everybody was good here. Everybody testified incredibly here, so I'm not going to criticize anybody, and you still believe that was effective assistance of counsel. When you're looking at it. I'm telling you, you still believe that. Is that what you're saying? Absolutely. Absolutely, and I'll tell you why. When counsel made the decision not to look at the rap sheet in this case, he did that under the premise he was already told that the outcome was that he received probation, and that based on counsel's experience, he presumed that the rap sheet was correct. Well, in this case, counsel was correct. Based on his experience, he made a correct judgment that he only applied to add back, because that's, in fact, what he applied to. So he did investigate. This isn't a situation where he didn't investigate at all. This witness is background or credibility. He investigated it, and it was reasonable that he relied on the State's attorney's comments as well as his own experience, because he was correct. So how do you know? Say it did say it was different, and he had corrected it. He still would have cross-examined solely on the fact that he got probation, that he got some kind of deal. That wouldn't have changed. The one, whether he applied to attempt murder or add back, the same inference is raised. And it succeeded in that. Pardon me? Information would have had an impact on credibility. I think that we have to show that there, he has to show that he was prejudiced here, that there's a reasonable likelihood that that would have happened. And his credibility was fully tested. They got an accomplice's instruction that they need to view Barbara's testimony with caution. And it simply has not been shown that there was prejudice here, in that there is a reasonable probability of the outcome of the trial. This outcome, he was not found guilty because of these two words that were mistaken. He was found guilty because of the overwhelming evidence in this case. And that's what counsel faced during closing argument. There's a mountain of evidence against the defendant, including two innocent victims who identified the defendant from a foot away, when they saw him, when he shot him. They weren't involved in any of this drugs or the missing car. They were in the wrong place at the wrong time. They were confrontable and impeached. We also have Carmona, who was in the car before and after he testified that the defendant had the gun. And his statement after they had probably shot him in the head and in the body. And then we have the defendant's own statement where he admits that he shot at close range. So he's only convicted because of these two. What about Carmona saying that the gun jammed and that that being argued was a basis for the attempted murder as opposed to scaring? I think that that goes to the fact that this wasn't an intent to scare. It was an intent to kill. He was hired to kill this person who they thought was Ruben because he did so at close range, within 12 inches. He wasn't shooting in the air or shooting in the backseat even or shooting down at the ground. He shot at what he thought in his statement in his head, the victim's head and his chest. There really is no reason probably that that bullet would have hit anywhere but the victim. And it defies logic and common sense that he was trying to scare the victim here based on all the evidence in this case. And as far as Counsel's closing argument, while he did weave in some anecdotes and some relatable examples to the jury, he did so, he rolled that into his underlying theory that there just simply was no intent in this case. And he stressed that to the jury throughout the entire closing argument. And he made the central issue very clear to the jury. Counsel in hindsight now is complaining about the style that Counsel used. But, you know, there is a presumption we need to look at that this was a reasonable trial strategy. And there's a lot of different strategies that Counsel as an attorney has used in closing argument. And a disapproval of his style, while he did make the central issues clear and argued the lack of intent, simply cannot support a strickland claim in this case. Now moving on to the second issue regarding 1F and crime. How do you reconcile Jackson? Pardon me? I asked Counsel to reconcile prior. And I'm now asking you, how do you reconcile Jackson? Are you familiar with people who reconcile Jackson? Well, Jackson is not, Abe is not in this brief. And I didn't cite Counsel. So honestly, I'm not familiar with it. If you would like, I would be happy to brief that out and submit it to the court at a later time. But I was not part of this brief, so I'm not familiar. What about the argument that regardless of how the jury was instructed, you argued, you relied on those shots to prove the, not you because you were trial counsel, but the State relied on those shots to prove the attempt murder? Right. We argued that there were two shots here. And these two shots supported the attempt murder, but we also argued that the shots at the car supported the act of discharge. In the end here, what we have is two victims and multiple shots, which according to 1F and crime doctrine, it does not apply. 1F and crime doctrine applies only where there are multiple convictions based on an act to a single victim, which in People v. Leach makes that very clear, that when there are multiple related acts and they're based on separate victims, the one act, one crime doesn't apply and we don't need to apportion the shots. So in this case, under the circumstances that we have, we had two bullets that would support both convictions. So you agree that you did not apportion the shots, and you agree that they were not differentiated in the indictment. They were differentiated. That's counsel's argument. You agree with that. The purpose of apportioning. You agree with counsel's argument that they were not apportioned and they were not differentiated in the indictment. It was apportioned only because they were named specifically in the indictments that we're talking about at discharge to both parties. Okay, both Cintron and Salgado here. We don't need to apportion it, but we may have, and the reason we're apportioning it is to put the defendant on notice that the way that he is being charged and he is on notice of what he is being charged with. He was very clear from the beginning. He was charged with firing into a vehicle knowing or at least should have known that the vehicles were occupied, correct? Correct. So you charged him with the two gunshots as it relates to the attempted murder. Both shots connected with one person. But yet on these other two charges, I do realize there were two counts, but they were charges of firing into a motor vehicle in a case where he should have known the vehicle to be occupied, correct? Right. But they weren't necessarily to a particular victim. The victims were named in each of those indictments. So he was on notice that he was charged with firing into a vehicle. So isn't that similar to, for example, if there's a theft of a lawnmower and the lawnmower is owned by both the husband and the wife, well, you can't be charged with theft against the husband and theft against the wife. There's just one count of theft there. Right. I think this is similar to that. I don't see how you get to where you are because it's very similar to the theft of the lawnmower. Okay. Well, counsel did bring that up in their brief and brought up the fact that an theft of a lawnmower. I don't think they used a lawnmower example. Not the lawnmower, but just the theft. You're right. That was creative. In a theft case, it's an offense against the property. Look in the code. It's under the section offense against property. Aggravated discharge to a fire, aggravated discharge or a fire under the vehicle is under the code where you're protecting the public. So this is an offense directed at an individual where a theft is focused on the property. And that's where I would say this, like in Mr. Pryor, where the one taking of the vehicle in Pryor, there were two victims, which the court found was fully supported and the one acting on crime did not prevent those two convictions. And just like here, the one shooting into the vehicle supports both of these separate counts where there are two victims in this case and the one act on crime doctrine does not prevent that from happening. Jackson disagrees with you. Okay. I'd be happy to look at that case. Jackson says that it doesn't matter if there's multiple victims. There's still just one act. Okay. It involved a vehicle hijacking where there were two people in the vehicle. Both people were ordered out of the vehicle and the person was charged with vehicle hijacking against both individuals. Okay. And without looking at that case, I would just like to try to see. Jackson actually said that it's one crime, one act, which is very similar to the case that we have here. Okay. And Jackson actually specifically disagrees with Pryor. Okay. It's a more recent case, 2016. Okay. We're relying on Pryor. October 27, 2016, Justice Ellis McBride, Justice Brinkman, this court. Well, I would rely on Pryor as well as Leach as well as a plethora of cases that would support the one act, one crime does not come into play in this situation. And for those reasons and the reasons in our brief, we'd ask that this court affirm defense, convictions, and sentence. Thank you. Your Honors, briefly, as to the first issue, we don't have confidence in the outcome or the verdict in this case where counsels failed to investigate, failed to use that information to impeach the credibility of the two crucial witnesses in the state, and failed to use closing arguments that would have shown all these things that could have done, what could have shown how close the evidence was with regards to intent. As to the one act, one crime issue, again, I apologize for not citing to Jackson. And if your Honors would like us to cite a motion with additional, well, I just said additional authority, I'm happy to do that for you. I think we're aware of that. Okay. But again, as Honorable Justice Crawford had asked, again, this case is not like prior, just by how the act, how the statute was written. The statute, the victim is essentially the occupied vehicle. It doesn't matter how many people are in there. As long as there's one person who may establish that with Mr. Saldado, multiple convictions for that offense cannot stand. If your Honors have no additional questions for those reasons and those stated in the briefs, TOR has requested that this court remand this case for a new trial if you should find that counsel is ineffective, or an alternative to vacate his conviction for ad discharge of a firearm in the direction of the occupied vehicle because it violates the one act, one crime doctrine. Thank you. Thank you both. We will take this matter under advisement, and you will hear from us shortly. This Court is in recess.